Morning, Your Honors. May it please the Court. My name is Sean Perez, and I represent Jesse Harrod, the appellant in this matter. I just briefly want to discuss one issue, and that's with respect to juror number 11 and the reasons that the prosecutor proffered for dismissing her. Initially, the prosecutor said, you know, she gave me a look, and that was in response to his dismissing juror number 5, the postal worker, an African American. And when he was right away to, you know, I think she was upset with me because I dismissed juror number 5 because she was an African American. And he even says, you know, this is what I'm thinking. So obviously, juror number 11 had a perception that the prosecutor was basing his dismissal of the juror based on race. And despite the fact that... And it is dismissing juror 11 because of race? Both. Well, both. Juror number 5 was dismissed first. That was the postal worker. Postal worker, yeah. Right. Juror number 11 was dismissed based on this dissatisfied look. Well, suppose juror 11 had been a Caucasian and had given the dissatisfied look. According to the explanation, the result would have been the same, and he would have kicked her, too. If a Caucasian juror, you know, was a little disappointed or thought maybe the fact that juror number 5 had been dismissed because of race, I think the same conclusion would be drawn. I mean, you know, racism is something that we should all be outraged with, not just blacks or whites, you know, one against the other. I mean, the point is that if this juror had a perception that the prosecutor was dismissing the initial juror based solely on race, I mean, that's enough right there. And the fact that he says this, you know, I think she's really, you know, she thought I dismissed that person because she was black. Well, that means this juror understood that from body language, whatever it was. I mean, we really don't know. And then with respect to juror number 5, the postal worker excuse, in and of itself, that's fine. But then his position was, I don't keep postal workers at all. And then he keeps juror Saunders, who is a postal worker. And there was no comparison, there was no, I don't want to go into comparative analysis because there wasn't enough there to do that. I mean, as your honors know, the record is very short with respect to Vore Dyer. That's a real problem for us. I mean, the call is for that of the district court. The result is that maybe the whole jury panel is excused and they start from scratch again and put together an all-white jury, an all-black jury, I don't know. And the questions on Vore Dyer there are different than they were here and the record is better and fine. You're we know, short of really a cold record, what was really going on. We really don't know, your honor. It is very troubling. And I think that the law puts a heavy burden on trial judges to treat defendants and plaintiffs fairly and to pay attention to what goes on in Vore Dyer. Clearly, and that brings me to one other point. In the California Court of Appeals, the Court of Appeals said a comparative analysis is not really very good because there's all these different components. But, I mean, that was back in 03. Well, in 05, I believe the California Supreme Court changed that. And certainly we know today that, I mean, that's the policy. I mean, you're going to look at the makeup of the jury. You're going to compare, you know, the results, the answers of each of the jurors. I mean, here we don't have the ability to do that. I understand the transcript was lost. I don't know if it was ever recovered. And it's a little unsettling. But I... Your claim on appeal, however, does not go directly to anything affecting the merits side of the case, right? No. Strictly with the... Strictly the jury's side. Correct. Tough case. I understand that, Your Honor. And I'll reserve the balance of my time. Good morning, and may it please the Court, Deputy Attorney General Colleen Tiedemann for the respondent. With regard to Juror No. 5, case law has held that this Court can do a comparative analysis for the first time in the Ninth Circuit. And if this Court does do a comparative analysis between Juror No. 5 and Juror Saunders, it's very clear that these jurors were not similarly situated. While they both worked for the Postal Office, Ms. Saunders was obviously a good juror for the prosecution. She had a sister who had been murdered, and the murder had never been found, never prosecuted. She made a comment during voir dire that indicated she had a problem with drug use, drug sales. She had a sister who had been arrested for, I believe, possession, and she felt that her sister had been treated fairly by the judicial system. And Juror No. 5 had a criminal history. He had a criminal record. So these two jurors were not similarly situated under a comparative analysis approach. Juror No. ... I'm sorry, Ms. Saunders was a good juror for the prosecution, and Juror No. 5 was not a good juror for the prosecution. With regard to the missing records, the missing transcripts, we have the transcript of the voir dire of these two jurors. We have their questions and answers on voir dire. What we don't have are simply the portions of the transcripts where the defense and prosecution were striking witnesses. So we do have a record that indicates what the basis was for certain jurors being stricken and certain jurors remaining on the jury. With regard to Juror No. 11 and the look that she gave the prosecution, it is clear, case law is clear, that a look, a glance, can be enough for a prosecutor to dismiss a juror. Even a hunch, a prosecutor can have a hunch that someone may not be a good juror, and that simply is also enough. With regard to whether or not this glance was made immediately after the prosecutor dismissed Juror No. 5, and that gave the prosecutor enough concern that he turned to the defense counsel and told the defense counsel, you know, did you see this look I just got from her? And the defense counsel corroborated that during the Batson hearing, that the prosecutor had told him this before he had even made his objection based on Batson. So I think the record clearly does support that the trial court's denial of the Batson Wheeler objection was not an unreasonable application of clearly established federal law. And just briefly with regard to the second issue raised by a panel with regard to whether or not Judge Saunders lied during her voir dire testimony. Again, I'd briefly like just to comment that the record was clear, an evidentiary hearing was held, and the district court found her to be credible, found her reasons to be credible, and there's nothing in the record to indicate that she was lying, and therefore there's no indication that the district court's finding was clearly erroneous. And unless there are any questions, I'll be happy to submit. Thank you. Okay, matters stand submitted. Thank you. Now, Moore v. Oleson, that's submitted on the briefs.
judges: Pregerson, Beezer, Thompson